## In re R.L., Juvenile

[547 A.2d 1360]

No. 86-571

Present: **Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed May 13, 1988

*Jeffrey L. Amestoy, Attorney General,* Montpelier, and *Michael O. Duane, Assistant Attorney General,* and *Barbara L. Crippen, Law Clerk (On the Brief),* Waterbury, for Plaintiff-Appellant.

*David W. Curtis, Defender General,* and *Henry Hinton, Appellate Defender,* Montpelier, for Defendant-Appellee.

**Dooley, J.**, concurring. I concur that the appeal must be dismissed as moot because the child has reached the age of majority and is no longer subject to the jurisdiction of the juvenile court. See 33 V.S.A. § 658. I do not agree that the case should not be heard because the order on appeal has been superseded by a later order. There remains a continuing question about the extent to which the district court can direct SRS to provide specific living arrangements and services in disposition orders. Further, the case clearly involves an issue capable of repetition, yet evading review. The appeal should have been decided on the merits if the juvenile involved had not reached the age of majority. A short review of the case and the appeal issues will show why.

R.L. was adjudicated as a child in need of supervision on April 25, 1986. At that time, R.L. was 16½ years of age. From the time R.L. was taken into temporary detention, attempts were made to find a permanent placement. Each temporary placement failed, usually because of R.L.'s violent behavior. Every appropriate facility or program in Vermont refused to take R.L. on learning of the history of aggressive and assaultive conduct. Similarly, out-of-state facilities and programs refused to take R.L. After a number of disposition hearings, SRS finally reported that they had "nothing further . . . we're at the end of the line as far as existing resources." Although SRS formally recommended that custody and guardianship of R.L. be transferred to SRS, the worker made clear that there was no appropriate placement for R.L., at least in the State of Vermont.

On August 21, 1986, the court finally entered a disposition order that ordered R.L. be placed in a "treatment, education program preferably of a group nature," designed to meet R.L.'s specific needs and located in the State of Vermont. The court further ordered that the placement be developed and R.L. referred to the placement within 30 days and went on:

> Failure of SRS to so place . . . [R.L.] within the thirty-day period will be cause to have a hearing on contempt of court so that SRS will need to show cause why it should not be held in contempt of court. I will also, to whatever extent jurisdictionally possible, consider the question of damages at that time.

Following the order, there was extensive procedural skirmishing including an appeal to this Court by SRS. On December 16, 1986, a different district judge amended the disposition order to give custody of R.L. to SRS with actual placement with R.L.'s parents. R.L. claims, and the majority agrees, that this amended order moots the appeal.

The Commissioner of SRS claims on appeal that 33 V.S.A. §§ 656(a)(3)(A) and 632(a)(10) give SRS as custodian the power to determine the appropriate placement for R.L. and that the trial court went beyond its authority in ordering SRS to place the child in a specific living arrangement. See *In re G.F.*, 142 Vt. 273, 455 A.2d 805 (1982). The Commissioner, in fact, objects to the second order because it requires "placement with parents" and thus, in his view, deprives him of the discretion to determine where R.L. will live. Thus, there is a fundamental difference between the Commissioner's view of his authority and that of each of the district judges involved in this case. The Commissioner has provided us with other opinions in other district court juvenile cases to demonstrate that there is not unanimity among district court judges on the extent of their authority in disposition orders.

Dispositional orders in juvenile cases are subject to modification for changed circumstances. See 33 V.S.A. § 659. Additionally, changes can come from periodic reviews. See 33 V.S.A. § 658. Particularly where the district court attempts to closely manage the living situation and services provided to the juvenile, frequent modifications of disposition orders can be expected. There is a great risk that placements for a juvenile with a history of violence towards others, like R.L., will not work.

Even under the later order of the district court, the main issue in this case is live and the parties still have a legally cognizable interest in the outcome. See *In re S.H.*, 141 Vt. 278, 280, 448 A.2d 148, 149 (1982). This case is similar to *In re H.A.*, 148 Vt. 106, 528 A.2d 756 (1987), where we held that a change in a dispositional order, as a result of a review, did not moot the parent's challenge to the original order transferring custody to SRS. In *H.A.*, the review order approved in part a new case plan that involved eventual return of the child to the parental home but did not change custody from SRS. In this case, the second dispositional order changes the directed living arrangement and services to something more palatable to the Commissioner but does not eliminate the basic direction to which he objects.

Even if the appeal were technically moot, I would hold that the central dispute is "capable of repetition, yet evading review" because once the district court decides to manage the living situation and services provided to the juvenile, there is a "demonstrated probability" that the objectionable conduct will recur. Compare *In re S.H.*, 141 Vt. at 281, 448 A.2d at 149-50.

I have no doubt that in some form the issues raised in this case will reach this Court again. I want to go on record as stating that we should hear the appeal and decide the issues if the juvenile involved is under the age of majority. I am authorized to state that Justice Peck joins in this concurring opinion.