NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 67

No. 25-AP-292

| | |
|---|---|
| In re Appeal of H.D. | Supreme Court |
| (Department for Children and Families, Appellant) | |
| | On Appeal from |
| | Human Services Board |
| | |
| | November Term, 2025 |

Michael J. Donohue, Chairperson

Maryellen Griffin, Staff Attorney, Vermont Legal Aid, Saint Johnsbury, for Petitioner-Appellee.

Charity R. Clark, Attorney General, Montpelier, and Timothy P. Connors, Assistant Attorney General, Waterbury, for Respondent-Appellant.

PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Treadwell, Supr. J., Specially Assigned

¶ 1. **REIBER, C.J.** This case concerns H.D.'s household eligibility for the Vermont General Assistance Emergency Housing Program as of July 1, 2025. The program provides eighty days of emergency housing. The Department for Children and Families (DCF) considered days that H.D. received prior to the start of fiscal year 2026 (FY26) in concluding that H.D. exceeded the eighty-day limit. H.D. appealed, and the Human Services Board reversed. It concluded that under the plain language of the "Big Bill" Fiscal Year 2026 Appropriations Act, 2025, No. 27, § E.321(b)(2) ("Act 27"), only the days that H.D. received during FY26 counted toward the eighty-day limit. The Board thus held that H.D. was eligible for the program at the time of her application. DCF appeals. As set forth below, we dismiss this appeal as moot.

¶ 2. H.D. argues that this case is moot because the issues presented are no longer live and the parties lack a legally cognizable interest in the outcome. See In re S.S., 2024 VT 87, ¶ 23,

__ Vt. __, 331 A.3d 1075 (recognizing that "mootness doctrine requires an actual controversy to be extant at all stages of review, not merely at the time the complaint is filed" (quotation and alteration omitted)). The parties agree that, applying the Board's interpretation of Act 27, H.D. has now exhausted her eighty days of emergency housing for FY26 under the program at issue. H.D. states that she no longer lives in emergency housing, she is not currently receiving the housing benefit, and she is ineligible for further emergency housing under Act 27.

¶ 3. DCF argues that this case falls within a narrow exception to mootness because it is capable of repetition but evading review. This exception requires a party to show that: "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party will be subjected to the same action again." Paige v. State, 2017 VT 54, ¶ 11, 205 Vt. 287, 171 A.3d 1011 (quotations omitted). DCF asserts that the central disputed issue in this case involves how to apply the eighty-day cap in Vermont's General Assistance Emergency Housing program. It contends that, since July 1, 2025, hundreds of individuals have requested fair hearings related to the application of this cap, and many applicants are repeat applicants, which means that the prospective application of the eighty-day cap is at issue in those cases. According to DCF, cases like this one are "inherently too short-lived to be fully litigated before the issue terminates" because decisions will be effective for eighty days only, and it acted diligently to expedite this appeal.[*]

¶ 4. We conclude that this case is moot because DCF fails to show that it is "capable of repetition" within the meaning of the exception. We thus do not reach the question of whether sufficient time exists to fully litigate these types of cases.

---

[*] As DCF acknowledges, the eighty-day cap is waived during the winter from December 1, 2025, through March 31, 2026. See Act 27, § E.321(b)(3) (stating that DCF "shall provide emergency winter housing to households meeting the eligibility criteria in subsection (a) of this section between December 1, 2025 and March 31, 2026," and "[e]mergency housing in a hotel or motel provided pursuant to this subdivision shall not count toward the maximum days of eligibility per 12-month period").

¶ 5.     In this case, H.D. requested a fair hearing to challenge DCF's determination that her household was ineligible for emergency housing under Act 27.  See 3 V.S.A. § 3091(a) (providing bases for requesting fair hearing before Board).  The Board has "only such adjudicatory jurisdiction as is conferred on [it] by statute, with nothing presumed in favor of [its] jurisdiction." In re S.S., 2024 VT 87, ¶ 11.  "The Board's actions in its order at the conclusion of the process are statutorily limited to 'affirming, modifying, or reversing decisions of the [a]gency and 'making orders . . . requiring the [a]gency to provide appropriate relief.' "   Id. ¶ 2 (quoting 3 V.S.A. § 3091(d) (alterations omitted)).  "While the Board can review 'agency policy,' it may do so only as far 'as it affects [a claimant's] situation.' "   Husrefovich v. Dep't of Aging & Indep. Living, 2006 VT 17, ¶ 28, 179 Vt. 456, 898 A.2d 726 (quoting 3 V.S.A. § 3091(a)).  The Board's decision here relates only to H.D.'s case.  There is no relief that the Board, or this Court, can offer in this case as H.D. has reached the eighty-day housing limit and she is no longer eligible for emergency housing under Act 27.

¶ 6.     The fact that other applicants may challenge DCF's interpretation of Act 27 in current or future cases does not establish that the circumstances here are "capable of repetition." We recognized in In re S.S. that "a case remains moot even if others will find themselves in a similar position" and emphasized that the inquiry is "person-specific."  2024 VT 87, ¶¶ 18, 23 (quotation omitted); see also 13C C. Wright & A. Miller, Federal Practice and Procedure § 3533.8.3 (3d ed. 2025) (stating that "simply showing that others will be affected by future repetitions of the challenged conduct ordinarily does not avoid mootness").  As another court explained:

> This prong requires that the same parties will engage in litigation over the same issues in the future.  The party invoking the exception must show a reasonable degree of likelihood that the issue will be the basis of a continuing controversy between the two parties.

Sec'y of Lab., Mine Safety & Health Admin. v. M-Class Mining, LLC, 1 F.4th 16, 24 (D.C. Cir. 2021) (emphasis added) (quotation omitted).  DCF has not satisfied this requirement here.

¶ 7.    We did not suggest a different approach in In re PCB File No. 92.27, 167 Vt. 379, 708 A.2d 568 (1998), cited by DCF.  In that case, Bar Counsel challenged an order by the chair of a Professional Conduct Board (PCB) hearing panel that required her to turn over certain investigatory materials to a respondent.  Bar Counsel complied with the order but asked this Court to declare the material privileged and not discoverable absent a showing of good cause.  We concluded that the case was not moot because it was capable of repetition but evading review.  We considered the first requirement satisfied "because the record indicates that the chair of another PCB panel has directed a similar order to bar counsel in another matter."  Id. at 381, 708 A.2d at 570.  Significantly, the parties were the same in the first and second action referenced by the Court—Bar Counsel was directed to produce her investigatory materials in both disciplinary cases by a PCB hearing panel chair—and thus, "there [was] a reasonable expectation that the same complaining party [would] be subjected to the same action again."  Id. at 381, 708 A.2d at 569-70 (quotation omitted).  The same is not true in the instant case.

¶ 8.    This case is akin to In re S.S., 2024 VT 87, where a petitioner was receiving temporary housing assistance through DCF.  The petitioner was later deemed ineligible for the assistance for thirty days pursuant to a particular agency rule.  The petitioner requested a fair hearing to challenge the period of ineligibility, and a hearing officer recommended reversing DCF's decision.  After the hearing officered issued his recommendation but before the Board issued a final order, DCF removed the petitioner's ineligibility period consistent with DCF guidance.  When the petitioner later asked the Board to issue a final order, the Board dismissed the case as moot.  It concluded that there was no longer any relief it could provide to the petitioner.

¶ 9.    The petitioner argued on appeal that her appeal was not moot because it was capable of repetition but evading review.  She asserted in relevant part "that she will likely find herself unhoused again and that DCF's and the Board's procedures ensure[d] that the situation [was] too short in duration to be fully litigated."  Id. ¶ 7.  She also asserted "that DCF's and the Board's

standard practices violate the law, that their procedures lead to a misrepresentation of their work in their annual report, and that these practices [would] continue to negatively affect others." Id.

¶ 10.   We rejected these arguments, concluding that S.S. failed to show "a reasonable expectation" that <u>she</u> would be subjected to the same action again, explaining that the case was moot "even if others will find themselves in a similar position." Id. ¶ 23 (quotation omitted). We added that, "[w]hatever the merit" of the arguments raised by the petitioner, "any holding on these issues would amount to a declaratory judgment and declaratory relief is not appropriate when it would only advise the ultimate decision-maker on points of law." Id. (quotation omitted). We thus declined to reach the policy arguments raised by S.S. as she had received the relief she sought and "there [was] no live controversy between adverse litigants." Id. ¶ 24.

¶ 11.   We reach a similar conclusion here. There is no longer a live controversy in this case between adverse litigants, and no exception to the mootness doctrine applies. This Court lacks constitutional authority to opine on how the eighty-day housing cap should be calculated in future cases. See id. ¶ 21 (recognizing that Court's "authority over a case is limited to the determination of actual, live controversies between adverse litigants," and "[u]nless an actual or justiciable controversy is present, a declaratory judgment is merely an advisory opinion which we lack the constitutional authority to render"). This appeal is therefore dismissed as moot

Appeal dismissed as moot.

FOR THE COURT:

_____
Chief Justice

5